NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

FRANCISCO ROSARIO GAXIOLA, *Appellant*.

No. 1 CA-CR 19-0253
FILED 5-21-2020

Appeal from the Superior Court in Maricopa County
No. CR2017-136480-001
The Honorable Jay R. Adleman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Kerri L. Chamberlin
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Kenton D. Jones joined.

**W I L L I A M S**, Judge:

**¶1**　　　　Francisco Gaxiola appeals his conviction and sentence for armed robbery, arguing the superior court erred in denying his motion to suppress a pretrial identification. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**　　　　In July 2017, an armed robbery occurred at a convenience store in south Phoenix. The incident was captured on the store's surveillance video, and a surveillance photo was taken as the suspect fled on foot. The store clerk (the "clerk") promptly called 911 to report the robbery. On the 911 call the clerk described the suspect as a Hispanic male around age 20 with facial hair, 5'6" tall, medium build, wearing blue jeans, a black baseball hat and a red long-sleeved plain t-shirt.[1] The clerk continued to help customers throughout the call. When the 911 operator asked whether the suspect had any tattoos or birthmarks, the clerk responded, "[H]onestly, I didn't take a real good look at him."

**¶3**　　　　Police identified Gaxiola as a possible suspect after interviewing the clerk, reviewing the surveillance video and photo, and conducting a database query. Gaxiola was 37 years old at the time, 5'11" and 230 pounds. Police then produced a six-photograph lineup of individuals who shared similar physical characteristics with Gaxiola and were within two years of his age. The photographic lineup showed each of the six individuals from just below their neck to the top of their head. Gaxiola's photo, taken one month earlier from an unrelated arrest, showed him wearing a red shirt; the same colored shirt the perpetrator wore during the robbery. Nine days after the robbery, police met with the clerk and showed her the six-photograph lineup. Before showing her the

---

[1] The clerk told police she estimated the suspect's age to be between 20 and 29 years old, and estimated the suspect's weight to be 150 pounds.

photographic lineup, the clerk was read the "photographic advisement"[2] and acknowledged she understood. The lineup was placed face down on the counter, and when the clerk turned over the lineup, she "immediately" pointed to the photograph of Gaxiola identifying him as the perpetrator of the armed robbery.

¶4            Before trial, Gaxiola moved to suppress the pretrial identification, arguing it was the result of an unduly suggestive confrontation procedure and an unreliable identification. The superior court denied the motion to suppress, finding the photographic lineup was not unduly suggestive, and even if it were, the pretrial identification was reliable.

¶5            A jury convicted Gaxiola at trial, and he timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

¶6            We review the superior court's ruling on a pretrial identification for abuse of discretion. *State v. Moore*, 222 Ariz. 1, 7, ¶ 17 (2009). "We defer to [the superior] court's factual findings that are supported by the record and are not clearly erroneous"; however, "[t]he ultimate question of the constitutionality of a pretrial identification is . . . a mixed question of law and fact" that we review *de novo. Id.* In reviewing a superior court's ruling on a motion to suppress, we look solely at the evidence presented at the suppression hearing.[3] *State v. Newell*, 212 Ariz. 389, 396, ¶ 22 (2006); *see also State v. Dessureault*, 104 Ariz. 380, 384 (1969) (outlining procedures for the trial court in conducting an evidentiary hearing when a pretrial identification is challenged).

¶7            The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires pretrial identification procedures be

---

[2] This is a standard admonition given by law enforcement prior to presenting photographic lineups to witnesses.

[3] In lieu of an evidentiary hearing, the parties stipulated to the admission of the following:  (1) a recording of defense counsel's interview of Detective Castillo; (2) a color copy of the photographic lineup; (3) a black and white photograph of the suspect leaving the store; (4) a recording of the clerk's 911 call; and (5) a copy of the surveillance video. Thus, we look solely at the stipulated record presented to the superior court.

conducted in a fundamentally fair manner that ensures the suspect's right to a fair trial. *State v. Lehr*, 201 Ariz. 509, 520, ¶ 46 (2002); *see Neil v. Biggers*, 409 U.S. 188, 198 (1972) ("It is the likelihood of misidentification which violates a defendant's right to due process . . . .").

¶8   Gaxiola argues the photographic lineup procedure used was "unduly suggestive" because Gaxiola was the only individual in the photographic lineup wearing a red shirt, the same colored shirt the clerk described the perpetrator to have worn and confirmed on the surveillance video. In its analysis the superior court noted several factors it considered in concluding the lineup was not unduly suggestive:

> (1) the officer utilized a very recent photograph of the Defendant, *i.e.,* from only one month prior to the [robbery]; (2) the relative ages of the six suspects in the lineup are all within two years of the Defendant's age; (3) all of the suspects are Hispanic males; (4) all of the suspects have similar complexions, shaved/bald heads, and facial hair; and (5) the officer provided the [clerk] with the standard identification admonitions/warnings prior to her identification of the suspect.

¶9   Assuming *arguendo* that Gaxiola is correct and the red shirt in the photographic lineup was unduly suggestive, the analysis does not end there. *Lehr*, 201 Ariz. at 520, ¶ 46 ("The mere fact that a pretrial identification procedure is overly suggestive . . . does not bar the admission of an identification.").

¶10   "If [we determine] that the pretrial identification procedure was unduly suggestive, [we] must next address the question whether the identification [was] nevertheless reliable." *State v. Smith*, 146 Ariz. 491, 496-97 (1985). We look to the totality of the circumstances in considering those factors set forth in *Biggers* to determine reliability:

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the [suspect], the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199-200.

¶11 Here the clerk stood face to face with the suspect for more than thirty seconds during the robbery. They spoke back and forth. Although the clerk underestimated the height, weight and age of the suspect, she was accurate in her description of a Hispanic male with facial hair, wearing a black baseball hat, plain long-sleeved red t-shirt and blue jeans, all of which were confirmed through the surveillance video. When the clerk was shown the photographic lineup, nine days after the crime, she "immediately" identified Gaxiola as the armed robber.

¶12 In considering the reliability of the clerk's pretrial identification, the superior court also had the benefit of viewing the store's surveillance video and a relatively clear black and white photograph of the suspect as he left the store. After viewing the same, and considering the *Biggers* factors, *supra* ¶ 10, we conclude the clerk's pretrial identification of Gaxiola was reliable.

## CONCLUSION

¶13 For the foregoing reasons, we affirm the decision of the superior court.



AMY M. WOOD • Clerk of the Court
FILED:   AA